ELIZABETH A. SPERLING - State Bar No. 231474
esperling@glaserweil.com
ALEXANDER R. MILLER - State Bar No. 294474
amiller@glaserweil.com
JACK DAY – State Bar No. 324516
jday@glaserweil.com
**GLASER WEIL FINK HOWARD**
  **JORDAN & SHAPIRO LLP**
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone:  (619) 765-4380
Facsimile:   (619) 483-0646

Attorneys for Defendants
Caydon San Diego Property LLC; Caydon USA Holding LLC; Caydon USA Property Group, LLC; and Alex Beaton

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA and CITY OF SAN DIEGO, a municipal corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CAYDON SAN DIEGO PROPERTY LLC, a Delaware Limited Liability Company; CAYDON USA HOLDING LLC, a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company; CAYDON USA PROPERTY GROUP, LLC, a Delaware Limited Liability Company; MATTHEW HUTTON, Receiver and Manager of CAYDON USA PROPERTY GROUP HOLDINGS PTY LTD; ALEX BEATON, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 3:23-cv-01296-LAB-DDL<br><br>The Hon. Larry A. Burns<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>[Filed concurrently with Declarations of Alexander P. Beaton and Joseph Russo; Evidentiary Objections to and Motions to Strike Declarations of David E. Miller, Val Sanchez, and Ali Fattah; and (Proposed) Orders on Evidentiary Objections]<br><br>Courtroom: 14A<br>Date: October 2, 2023<br>Time: 11:30 a.m.<br><br>Date filed: June 12, 2023<br>Removal Date: July 14, 2023 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. PROCEDURAL BACKGROUND ......................................................................3

III. ARGUMENT .......................................................................................................4

    A. A Motion To Remand Should Be Denied Where, As Here, Removal Was Proper In The First Instance. ........................................4

    B. Complete Diversity Exists Because The City—Not The State—Is The Real Party In Interest. ............................................................5

    C. Complete Diversity Exists Because Alex Beaton Is A Textbook Sham Defendant Added By The City To Defeat Diversity Jurisdiction. ......................................................................................11

    D. There Are No Legitimate Doubts That Removal Was Proper. ....14

IV. CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Cal. v. M&P Invs.*,
    213 F. Supp. 2d 1208 (E.D. Cal. 2002) ........................................................ 7, 10

*Cal. v. N. Trust Corp.*,
    2013 WL 1561460 (C.D. Cal. April 10, 2013) ................................................ 10

*Cal. v. Purdue Pharma L.P.*,
    2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) ................................................... 8

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
    642 F.3d 728, 737 (9th Cir. 2011) ........................................ 2, 5, 6, 7, 8, 9, 10

*Ex parte Nebraska*,
    209 U.S. 436 (1908) ........................................................................................ 5

*Lennard v. Yeung*,
    2011 WL 13217925 (C.D. Cal. Aug. 16, 2011) ............................................... 4

*McCabe v. General Foods Corp.*,
    811 F.2d 1336 (9th Cir. 1987) ...................................................................... 11

*Miss. ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014) .................................................................................. 5, 11

*Mo., Kan. and Tex. Ry. Co. v. Hickman*,
    183 U.S. 53, 60 (1901) ........................................................................... 1, 2, 7

*N. Pub. Commc'ns Council ex rel. Or. v. Qwest Corp.*,
    877 F. Supp. 2d 1004 (D. Or. 2012) ................................................................ 7

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458 (1980) ........................................................................................ 6

*Nev. v. Bank of Am.*,
    672 F.3d 661 (9th Cir. 2012) .................................................................. 6, 8, 9

*People of Cal., ex rel. Herrera v. Check 'N Go of Cal., Inc.*,
    2007 WL 2406888 (N.D. Cal. Aug. 20, 2007) ................................................. 9

*Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*,
    598 F.2d 1303 (3d Cir. 1979) .......................................................................... 5

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) ...................................................................... 12

## STATE CASES

*People ex rel. Dep't of Pub. Works v. Glen Arms Estate, Inc.*,
  230 Cal. App. 2d 841 (1964) ............................................................................. 10

*People ex rel. Gallo v. Acuna*,
  14 Cal. 4th 1090 (1997) ..................................................................................... 9

*People ex rel. Sorenson v. Randolph*,
  99 Cal. App. 3d 183 (1979) ............................................................................... 9

*People v. Lim*,
  118 Cal. 2d 872 (1941) ..................................................................................... 10

## FEDERAL STATUTES

28 U.S.C. § 1332 ............................................................................................. 3, 4

28 U.S.C. § 1332(a) ........................................................................................ 4, 5

28 U.S.C. § 1332(a)(1) ....................................................................................... 5

28 U.S.C. § 1441 ............................................................................................. 3, 4

## STATE STATUTES

Cal. Code Civ. Proc. § 731 ................................................................................ 10

## OTHER AUTHORITIES

San Diego Mun. Code § 11.0210 ................................................................... 3, 4

San Diego Mun. Code § 12.0903(c) ............................................................... 2, 7

San Diego Mun. Code § 12.0908(f) ............................................................... 2, 7

San Diego Mun. Code § 12.0909 ................................................................... 2, 7

San Diego Mun. Code § 12.0910 ................................................................... 2, 7

San Diego Mun. Code § 13.0401 ................................................................... 2, 7

San Diego Mun. Code § 13.0402 ................................................................... 2, 7

## STATE CASES

*People ex rel. Dep't of Pub. Works v. Glen Arms Estate, Inc.*,
  230 Cal. App. 2d 841 (1964) ............................................................................. 10

*People ex rel. Gallo v. Acuna*,
  14 Cal. 4th 1090 (1997) ..................................................................................... 9

*People ex rel. Sorenson v. Randolph*,
  99 Cal. App. 3d 183 (1979) ............................................................................... 9

*People v. Lim*,
  118 Cal. 2d 872 (1941) ..................................................................................... 10

## FEDERAL STATUTES

28 U.S.C. § 1332 ............................................................................................. 3, 4

28 U.S.C. § 1332(a) ........................................................................................ 4, 5

28 U.S.C. § 1332(a)(1) ....................................................................................... 5

28 U.S.C. § 1441 ............................................................................................. 3, 4

## STATE STATUTES

Cal. Code Civ. Proc. § 731 ................................................................................ 10

## OTHER AUTHORITIES

San Diego Mun. Code § 11.0210 ................................................................... 3, 4

San Diego Mun. Code § 12.0903(c) ............................................................... 2, 7

San Diego Mun. Code § 12.0908(f) ............................................................... 2, 7

San Diego Mun. Code § 12.0909 ................................................................... 2, 7

San Diego Mun. Code § 12.0910 ................................................................... 2, 7

San Diego Mun. Code § 13.0401 ................................................................... 2, 7

San Diego Mun. Code § 13.0402 ................................................................... 2, 7

Defendants Caydon San Diego Property LLC ("Caydon San Diego"), Caydon USA Holding LLC ("Caydon USA Holding"), Caydon USA Property Group LLC ("Caydon USA Property Group") (collectively, the "Caydon entities"), and Alex Beaton ("Mr. Beaton") (collectively, "Defendants") respectfully submit this brief in opposition to Plaintiffs' Motion to Remand ("Remand Motion") [Doc. No. 21].

## I.     INTRODUCTION

Mara W. Elliot, the City Attorney for the City of San Diego, brought this lawsuit— twice—in San Diego State Court concerning an entirely local dispute. Both times Defendants properly removed the action to this Court because complete diversity exists between the parties. The City now argues that the State's presence in the lawsuit destroys diversity because the State is not a citizen of itself. In doing so, the City ignores well-settled jurisprudence by the Supreme Court as well as the Ninth Circuit establishing that the City's argument is not the correct inquiry. The State's mere presence in this lawsuit is insufficient to destroy diversity. The proper inquiry is whether the State is the *real party* in interest with a *unique* and *substantial* interest in the outcome of the litigation. The answer to that question is a resounding "NO."

The City Attorney of San Diego—not the State DOJ—brought this lawsuit to address the City's grievances concerning a rundown property located in Downtown San Diego (the "Property"). The State has no interest in the outcome of this lawsuit. The general public nuisance statute invoked is solely for the City of San Diego's benefit, not the State of California. The relief sought is exclusively for the City, not the State. At most, any conceivable interest the State may have is limited to its general interest in ensuring compliance with the State nuisance law. But under controlling Supreme Court and Ninth Circuit precedent, that is insufficient to render the State a real party in interest for diversity purposes. *See Mo., Kan. and Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 60 (1901) ("*Missouri Railway*") (the State's "general governmental interest" in "securing compliance with all its laws" is "not that which makes the state . . . a real party in interest in the litigation, for if that were so the state would be a party in interest in all

litigation."); *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 (9th Cir. 2011) ("*Lucent*") ("[A] State's presence in a lawsuit will defeat diversity jurisdiction under 28 U.S.C. § 1332(a)(1) ***only if*** 'the relief sought is that which inures to ***it alone*** . . . .'") (emphasis added) (quoting *Missouri Railway*, 183 U.S. at 59).

The City's complaint makes clear that none of the relief it seeks uniquely or substantially inures to the State of California. The benefit of the City's requested injunction to abate the purported public nuisance and violations of the San Diego Municipal Code would flow uniquely to the City. Similarly, the civil penalties the City seeks as damages for the purported violations of the City Municipal Code would, by the City's own admission, be "recoverable by the City." Compl. at 25. Indeed, any civil penalties the City may recover in this action for alleged violations of its Municipal Code would be paid to the City, not the State. *See* San Diego Municipal Code §§ 12.0903(c), 12.0908(f), 12.0909, 12.0910, 13.0401, 13.0402.

The City's lack of conviction in its own argument is highlighted by the City's dismissal of its original lawsuit and re-filing a new lawsuit that did nothing more than add a California defendant with no affiliation with the Caydon entities or interest in the property in a transparent attempt to destroy diversity. Mr. Beaton is not a proper defendant in this lawsuit, and the City's strained attempt to depict him as an employee or representative of Defendants is unsupported by evidence and, in fact, is contradicted by the declarations of Mr. Beaton himself and the former CEO of the Caydon entities.

Finally, much of the City's Remand Motion is devoted to improperly prejudicing Defendants with allegations concerning the deteriorating conditions of the Property. While the City does everything it can to portray the Property and Defendants in the worst possible light, those characterizations are irrelevant to this jurisdictional dispute because they do not demonstrate that the Property is an issue of statewide concern. Nothing in the City's dramatic depictions show that anyone outside of Downtown San Diego is even aware of the Property, let alone affected by it. None of the conditions the City describes show how the Property has any impact on anyone beyond the city

block on which the Property is located. Nor does the City show that the State has ever been involved in or is even aware of this dispute. The City's prejudicial and irrelevant allegations should be disregarded by the Court.

## II. PROCEDURAL BACKGROUND

On April 27, 2023, Plaintiffs filed a complaint in the Superior Court of the State of California, County of San Diego, titled *The People of the State of California, et al. v. Caydon San Diego Property LLC, et al.*, Case No. 37-2023-00017820-CU-MCCTL (the "Original Action"). The Original Action included every Defendant named in this action with the exception of Mr. Beaton.

On June 1, 2023, Defendants timely removed the Original Action to the United States District Court for the Southern District of California on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. The Original Action was Case No. 3:23-cv-1020-LAB-DDL assigned to the Honorable Larry Alan Burns. *See* Original Action, Doc. No. 1. On June 9, 2023, Plaintiffs filed a Notice of Voluntary Dismissal of the Original Action. *See id.*, Doc. No. 8. On June 14, 2023, the Court dismissed the Original Action without prejudice in its entirety. *See id.*, Doc. No. 9.

On June 12, 2023, before the Original Action was even dismissed by the Court, Plaintiffs commenced this action by filing an almost identical complaint (the "Complaint") against Defendants in the Superior Court of the State of California, County of San Diego, titled *The People of the State of California, et al. v. Caydon San Diego Property LLC, et al.*, Case No. 37-2023-00024446-CU-MC-CTL (the "Present Action"). The only difference between the Original Action and the Present Action is that Plaintiffs added Mr. Beaton—a California resident—as a defendant. Plaintiffs failed to file a notice of related case.

If Plaintiffs truly believed that Mr. Beaton is liable, is a Responsible Person (as defined by Section 11.0210 of the San Diego Municipal Code), or actually has some affiliation with the Caydon entities, they could have named him as a defendant in the Original Action. If Plaintiffs genuinely forgot to include Mr. Beaton as a party, they

3

would have simply amended the Complaint in the Original Action to add him. Plaintiffs also could have "DOE'd in" Mr. Beaton, as they name 50 Doe Defendants in both of their complaints. Instead, Plaintiffs revealed their true motives by dismissing the Original Action and re-filing the identical Complaint in State Court with the sole difference being the addition of Mr. Beaton, a California citizen. This is a textbook case of forum shopping by adding a sham defendant to destroy diversity. *See, e.g.*, *Lennard v. Yeung*, 2011 WL 13217925, at *7 (C.D. Cal. Aug. 16, 2011).

On July 14, 2023, Defendants timely removed the Present Action to this Court, once again on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. Defendants also filed a supporting declaration of Mr. Beaton that rebutted Plaintiffs' false assertions that Mr. Beaton is a property manager for the Property and a "Responsible Person" with respect to the Property, as defined by Section 11.0210 of the San Diego Municipal Code. *See* Doc. No. 1-2. He is neither.

On August 14, 2023, Plaintiffs filed the instant Remand Motion, arguing that removal was improper because the State of California is the real party in interest and because Mr. Beaton's presence in this lawsuit destroys diversity. *See* Doc. No. 21. The City is incorrect and offers no legal or factual support for either assertion. The Remand Motion should be denied.

## III. ARGUMENT

### A. A Motion To Remand Should Be Denied Where, As Here, Removal Was Proper In The First Instance.

A motion to remand to state court is properly denied when, as in this case, the action was properly removed in the first instance under 28 U.S.C. § 1441. Removal is proper when the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a). Defendants met that standard on July 14, 2023 by demonstrating that the amount in controversy far exceeds $75,000 and that complete diversity exists between Plaintiffs and Defendants because the City is a citizen of California and Defendants are citizens of Delaware,

Texas, and Australia. *Id.*

### B. Complete Diversity Exists Because The City—Not The State—Is The Real Party In Interest.

The City contends that, because it unilaterally included "The People of the State of California" as a plaintiff in this case, that automatically ensures the action will not be removable. The City is wrong. It has been well established by more than one hundred years of jurisprudence that the State's mere presence in an action is insufficient to defeat diversity. *See Ex parte Nebraska*, 209 U.S. 436, 444 (1908) ("[T]he mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy."); *Lucent*, 642 F.3d at 737 (holding that the State's presence in the lawsuit was insufficient to defeat diversity); *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979) ("That a state, a state agency, or its officers may have been named as parties . . . is not dispositive" for diversity purposes). Further, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Lucent*, 642 F.3d 737-38.

Rather, in determining whether removal was proper, courts must "look behind the pleadings to ensure that the parties are not improperly creating or destroying diversity jurisdiction." *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014). To do this "in cases involving a State or state official," courts must identify the "real party in interest." *Id.*

The Ninth Circuit addressed this issue head on in *Lucent* and articulated two requirements that must be met for the State to be considered the real party in interest for purposes of diversity jurisdiction. *First,* the State's presence in the lawsuit "will defeat jurisdiction under 28 U.S.C. § 1332(a)(1) **only if** 'the relief sought is that which **inures to it alone** . . . .'" *Lucent*, 642 F.3d at 737 (emphasis added). *Second,* the State's interest in the outcome of the action must predominate; it cannot be "tangential" to the relief afforded to the aggrieved party. *Id.* at 739. In other words, the State must be a

"real and substantial part[y] to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). When conducting the requisite analysis, the case should be looked at as a whole, rather than conducting a claim-by-claim analysis. *See Nev. v. Bank of Am.*, 672 F.3d 661, 670 (9th Cir. 2012) (citing *Lucent*, 642 F.3d at 740) ("The question as to whether or not the state is the real party in interest must be determined by the essential nature and effect of the proceeding as it appears from the entire record."). This action is unquestionably a local action to address a local issue that has no bearing on the State of California.

As to the first *Lucent* factor, the relief sought by the City is entirely local in nature. First, the City seeks an order declaring the Property a public nuisance in Downtown San Diego and in violation of certain sections of the San Diego Municipal Code. *See* Compl., Prayer ¶¶ 1, 4. The declaratory relief sought—that the Property be declared a public nuisance and in violation of the San Diego Municipal Code—pertains only to the Downtown San Diego Property and has no impact on the State as a whole. Second, the City seeks an injunction enjoining and restraining Defendants from maintaining the Property as a purported public nuisance and in violation of the Municipal Code. *Id.* ¶¶ 2, 3, 5-7. The City effectively seeks to compel Defendants to demolish the building. *Id.* And if they do not do so, the City will seek to recover its expenses from Defendants. *Id.* ¶¶ 3, 7. No one outside of Downtown San Diego, let alone anywhere else in the State, would even know about the demolition or injunction, much less be affected by it or benefit from it.[1] The requested injunctive relief and related abatement inure exclusively to the interests of the City. Third, simply because the City Attorney named the State of California as a party because she can, does not

---

[1] The City asserts that it is "abundantly clear that the State has an interest in this case" because "the City's Engineer Fattah has opined that abating the public nuisance alleged is necessary to avoid injury and death to the general public." Remand Mot. at 12. Notwithstanding the fact that Mr. Fattah's declaration is improper and irrelevant expert testimony [*see* concurrently filed evidentiary objections to same], there is nothing in his testimony to support the notion that the Property is a matter of statewide public concern or that it affects anyone outside the city block on which the Property is located.

transmute the action into a case of statewide public concern.  *See Cal. v. M&P Invs.*, 213 F. Supp. 2d 1208, 1215 (E.D. Cal. 2002) ("**[W]hen a city attorney files suit 'in the name of the people of the State of California' under CCP § 731, he represents *only* the interests of the city he serves, not the State.**") (emphasis added).  Finally, the civil penalties that the City seeks for alleged violations of the City's Municipal Code would be paid to the City, not to the State of California.  *See* San Diego Municipal Code §§ 12.0903(c), 12.0908(f), 12.0909, 12.0910, 13.0401, 13.0402; *N. Pub. Commc'ns Council ex rel. Or. v. Qwest Corp.*, 877 F. Supp. 2d 1004, 1013 (D. Or. 2012) (civil penalties sought on behalf of State of Oregon did not destroy diversity because the requested relief did "not inure to the State of Oregon 'alone'").

Plaintiffs do not seek any statewide injunctive relief that would affect a large group of California residents.  Nor do they seek damages on behalf of all California residents.  Nor do they seek civil penalties that only the State could obtain.  Nor do they identify any public nuisance that affects all California residents.  None of the damages or relief that the City seeks would inure either solely or substantially to the State.  It is all for the City's sole and exclusive benefit.

As to the second *Lucent* factor, any remotely conceivable State interest here is at best "tangential" to the City's interest.  *See Lucent*, 642 F.3d at 739-40.  This action is all about a rundown property in Downtown San Diego; the City's argument that the State is the real party in interest because the "equitable remedies in this case benefit all California residents and deter similar wrongdoings throughout the State" [Remand Mot. at 12] is simply not true.  It also has no legal import.

The Ninth Circuit has explicitly stated that the State's general "'governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws' . . . **will not satisfy the real party to the controversy requirement for the purposes of defeating diversity because 'if that were so the same would be a party in interest in all litigation**.'" *Lucent*, 642 F.3d at 737 (quoting *Missouri*, 183 U.S. at 60) (emphasis added).

The City's conclusory and self-serving statement that the remedies it seeks will benefit all California residents and deter "similar wrongdoings throughout the State" is precisely the type of general statewide interest that the Ninth Circuit expressly found to be insufficient. *See id.* Apart from the general public nuisance law, which in this case is being invoked by the City for its sole benefit, there are no state laws or legal orders by state officials at issue. The monetary and equitable relief that the City seeks is exclusively for the City's benefit. To the extent any of the relief sought in this action would possibly flow to the State—and, to be sure, there is none—it would be tangential at best to the relief the City seeks for itself. *Id.* at 739. The State simply is not a real party to this controversy. There is no genuine State interest at issue in this case, let alone a substantial and predominant interest.

The cases that the City cites in support of its position are easily distinguishable because those cases involved clear statewide issues with obvious statewide implications. Take *Cal. v. Purdue Pharma L.P.*, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014), for example. That action was brought by the People of the State of California to address the opioid "'epidemic' jeopardizing the health and safety of all Californians—both through direct harm to opioid users and indirect harm to communities . . . ." *Id.* The State's interest there was clear and substantial given the statewide health and safety implications of the nationwide opioid epidemic. Moreover, the relief sought actually was on behalf of all Californians. *See id.* ("[A]ny recovery . . . further[ed] the interests of the State, not the Counties.").

Similarly, *Nevada*, 672 F.3d 661 was brought by Nevada's Attorney General on behalf of the State of Nevada to remedy "the wide-ranging effects of the mortgage and foreclosure crisis" in Nevada. *Purdue Pharma*, 2014 WL 6065907, at *3 (summarizing *Nevada*). The State sought damages on behalf of all Nevadans. *Nev.*, 672 F.3d at 671 ("[D]amages here would be paid directly to Nevada and then distributed to individual consumers"). The Ninth Circuit explicitly recognized the "devastating injury" to "Nevada residents and the Nevada economy as a whole" caused by the foreclosure

crisis and noted that, "[c]onsidering the devastating effect of the foreclosure crisis on Nevada, it [was] unsurprising that the Attorney General would exercise her statutory right to 'bring an action in the name of the State of Nevada . . . .'" *Id.* at 670-71.

In contrast, there is no statewide crisis affecting all Californians at issue in this case. There is no remedy that is being sought on behalf of all Californians. This action pertains to a single rundown building in Downtown San Diego that the City wants to have demolished. For that building, the City seeks to recover for the City treasury its alleged investigative costs and civil penalties under the local Municipal Code.[2]

The City's blanket assertion that "[c]ourts have consistently recognized that the State has a 'substantial interest in abating public nuisances'" ignores the highly fact-specific analyses of the cases it cites. For example, the City relies on *People ex rel. Sorenson v. Randolph*, 99 Cal. App. 3d 183, 186 (1979). That case is factually and legally inapposite because it addressed a property that "promoted a systematic course of illegal sexual acts" such as "acts of prostitution . . . performed on customers, including police officers," and "[p]ublic masturbation." *Id.* at 187. And the issue before the California Court of Appeal was not whether the nuisance was of local or statewide concern. But even so, the laws prohibiting such activities are obviously federal and state in nature, as opposed to municipal.

Similarly, *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1090-91 (1997) is another California case that addressed "gang activities," including "[m]urder, attempted murder, drive-by shootings, assault and battery, vandalism, arson, and theft . . . ." Again, the issue before the California Supreme Court was not whether the nuisance was of local or statewide concern. Notwithstanding, the State has an obvious interest in protecting all citizens from violence, and the laws at issue in *Gallo* were

---

[2] The City also cites *People of Cal., ex rel. Herrera v. Check 'N Go of Cal., Inc.*, 2007 WL 2406888, at *5-7 (N.D. Cal. Aug. 20, 2007), which predates *Lucent* and *Nevada* and is not good law, as it does not engage in the requisite analysis articulated by the Ninth Circuit. In any event, like all of the City's cited authorities, it is not binding precedent.

federal and state laws, not local municipal ordinances, as in this case.

The City also cites *People v. Lim*, 118 Cal. 2d 872, 475-76 (1941) and *People ex rel. Dep't of Pub. Works v. Glen Arms Estate, Inc.*, 230 Cal. App. 2d 841, 854 n.10 (1964) in support of its position that "this action can be treated as if the State brought the matter." Remand Mot. at 11.  Defendants do not dispute that a city attorney may bring an action on behalf of the People of the State of California under C.C.P. § 731. But just because the City Attorney *can* bring a public nuisance action in both the City's and State's names, that does not supplant the necessary real party in interest analysis. Nor does it automatically transmogrify the action into a statewide public nuisance case. *See Cal. v. N. Trust Corp.*, 2013 WL 1561460, at *2 (C.D. Cal. April 10, 2013) (applying *Lucent* and stating that "**even where a state statute authorizes suit on behalf of the State**," that "**will not make the State a real party in interest unless accompanied by a unique and substantial interest of the State**") (emphasis added).

In *M&P Investments*, for example, the court held that "the real party in interest asserting the Plaintiff People's state law nuisance claims [under § 731] is the City . . . ." *M&P Invs.*, 213 F. Supp. 2d at 1217.  The court reasoned that it would be "absurd to argue that the state legislature intended that under CCP § 731 a city attorney represents the 'People of California' . . . when the 'actual' client, the city, alone authorizes, directs, finances, and assumes complete responsibility for the litigation . . . ." *Id.* at 1216-17.  That is precisely the case here.  The case is entirely authorized, directed, litigated, and funded by the City Attorney of San Diego, who is completely responsible for this litigation.  The mere fact that the City names the State of California as a party—just because it can—does not alter the fundamental nature of the suit.  Nor does it change the fact that the State has no real or substantial interest in this case.

The City's specious contention that the State's mere presence in this lawsuit destroys diversity is undermined by its own actions.  Instead of moving to remand the Original Action on the basis of that contention, the City dismissed the Original Action and re-filed a near-identical complaint that named Mr. Beaton—a California resident—

as a defendant. If the City truly believed the State to be a real party in interest, why go to the time, effort, and expense of dismissing and re-filing the action? The answer is clear. It is because the City knows that this is an entirely local dispute and that the City of San Diego—and not the State—is the real party in interest here.

Finally, the local nature of this dispute is further highlighted by the City's desperate efforts to keep this action out of federal court and on its home turf. David Miller has made no secret of the fact that he is used to getting his way in state court where he and his hundreds of colleagues at the City Attorney's Office throughout the years have regularly appeared before the judges on a daily basis. *See* Doc. No. 17 ("Plaintiffs' counsel further believed, as it was his experience in state court, where he had exclusively practiced, that this court would grant the motion . . . ."). That is all the more reason to protect these out-of-state and foreign Defendants' right to remove the action and litigate this matter in a fair, impartial, and equitable forum.

### C. Complete Diversity Exists Because Alex Beaton Is A Textbook Sham Defendant Added By The City To Defeat Diversity Jurisdiction.

As set forth in Defendants' Notice of Removal [Doc. No. 1], the declarations filed in support [Doc. Nos. 1-2, 1-3], and this Opposition, complete diversity exists here because Defendants have demonstrated that each of them is a citizen of a state (and country) other than California (and the U.S.). The City's fraudulent joinder of Alex Beaton as a defendant is a blatant and improper attempt to keep this case out of federal court. *See* Doc. No. 1 at 7-9; *Miss. ex rel. Hood*, 571 U.S. at 174 ("We have held, for example, that a plaintiff may not keep a case out of federal court by fraudulently naming a nondiverse defendant."); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (disregarding the presence of "sham" California resident defendants for purposes of diversity jurisdiction).

The City argues that *McCabe* is distinguishable because there the court held that the plaintiff failed to state any cause of action against the defendants determined by the court to be "sham" defendants. *See* Remand Mot. at 13. But that does not render

*McCabe* distinguishable. Quite the opposite. Defendants have now submitted three declarations establishing that there is no claim for relief against Mr. Beaton because he is not an employee or representative of any Caydon entity or a "Responsible Person" with respect to the Property. *See* Declaration of Alexander P. Beaton ("Beaton Decl. No. 1"), Doc. No. 1-2 ¶¶ 2, 4-6; Declaration of Joe Russo ("Russo Decl.") ¶¶ 4-8; Declaration of Alexander P. Beaton ("Beaton Decl. No. 2") ¶¶ 2-14.

"If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing with approval *McCabe*, 811 F.2d at 1339). "[A] a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318. Where no claim for relief can be stated against a nondiverse defendant, the Ninth Circuit "hold[s] that they were fraudulently joined for diversity and removal purposes. As a result, this case was properly removed." *Id*. at 1320.

Here, Plaintiffs have no cognizable claim for relief against Mr. Beaton. The conclusory and self-serving assertion by the City that Mr. Beaton "frequently represented to city investigators and staff that he was responsible for abating the violations at the Property" [Remand Mot. at 13] is categorically false. Mr. Beaton represented just the opposite. *See* Beaton Decl. No. 2, ¶ 10. On at least one occasion, Mr. Beaton told the City in no uncertain terms and in writing that he was *not* an authorized representative of Caydon. *Id*. The City explicitly acknowledged this and expressed its understanding of Mr. Beaton's role and his lack of authority with respect to the Property. *See id.*, Ex. 1 ("Alex stated that he has no authority to represent you as the owner so we were unable to continue the call with him . . . . The City requests an authorized ownership representative contact us as soon as possible . . . .").

The City's claim that "the addition of Alex Beaton as a defendant to the Present Action was made because after further investigation [following the filing of the

1  Original Action] it was clear to Plaintiffs that Beaton was also responsible for
2  maintaining a public nuisance and dangerous building conditions at the Property" is
3  belied by Mr. Miller's statement that, over the past three years, Mr. Beaton has
4  exchanged hundreds of emails with the City concerning the Property.  *See* Remand
5  Mot. at 13; Doc. No. 21-2 ¶ 13.  The City was fully aware of Mr. Beaton's existence
6  and his limited, tangential role in relation to the Property long before Plaintiffs'
7  counsel's purported "further investigation" after Plaintiffs filed the Original Action.
8  The City's decision to dismiss and refile the action with Mr. Beaton as a new defendant
9  was clearly a reactive measure taken in an attempt to avoid this Court's jurisdiction.

10       Moreover, the City's insistence that Mr. Beaton is a "Responsible Person" is
11  directly contradicted by the testimony of both Mr. Beaton and Mr. Russo.  *See* Russo
12  Decl. ¶ 8; Beaton Decl. No. 1, Doc. No. 1-2 ¶ 6.  Mr. Beaton and Mr. Russo have also
13  testified that Mr. Beaton has no interest in the property, never held himself out as an
14  employee of the Caydon entities, and never said he was in any way responsible for the
15  abatement of the Property.  *See* Russo Decl. ¶¶ 4-8; Beaton Decl. No. 1, Doc. No. 1-2
16  ¶¶ 2, 4-6; Beaton Decl. No. 2 ¶¶ 2-14.

17       The City's assertion that Mr. Beaton's use of "an email with a domain of
18  @caydonusa.com" meant he was "obviously . . . employed and working for Defendant
19  Caydon USA" [Remand Mot. at 14] is also contradicted by the testimony of both Mr.
20  Beaton and Mr. Russo.  Mr. Beaton explained that it is "not unusual for [him] to use an
21  email address associated with the company [he is] consulting for because it allows
22  [him] to better organize and distinguish between different projects [he is] working on
23  simultaneously for different clients."  Beaton Decl. No. 2, ¶ 5.  And Mr. Russo states
24  in his declaration that "Mr. Beaton's use of the temporary  email address
25  abeaton@caydonusa.com for a limited period while providing project-specific
26  consulting services to the Caydon entities did not make him an employee or
27  representative of any of the Caydon entities. Mr. Beaton was never a Caydon employee;
28  never received a W-2 from Caydon; and was never anything but an independent third-

1  party contractor who consulted for us on a task-by-task basis." Russo Decl. ¶ 7.

2  In sum, there is no evidence that Mr. Beaton bears any liability for Plaintiffs' claims in this action. He was never an employee or representative of any Caydon entity and was never a "Responsible Person" with respect to the Property. There is no lawful basis for Plaintiffs to recover from Mr. Beaton under any theory. He is not a proper party to this action and Plaintiffs fail to state a claim for relief against Mr. Beaton. Mr. Beaton was fraudulently joined to this action to defeat diversity jurisdiction and his citizenship should be disregarded. This action was properly removed.

### D.  There Are No Legitimate Doubts That Removal Was Proper.

While it is true that, in general, doubts concerning a court's jurisdiction should be resolved in favor of remand, here there is no doubt and no question that removal was proper and this Court has jurisdiction over this case. Nor can there be any doubt that the City's dismissal of the Original Action and refiling of the Present Action in state court naming Mr. Beaton as a party was a textbook case of forum shopping, with Mr. Beaton fraudulent joined as a sham defendant for the purpose of destroying diversity.

Defendants have demonstrated beyond a doubt that the City is the real party in interest in this entirely local dispute and that the State's presence in name alone does not defeat this Court's jurisdiction.

## IV.  CONCLUSION

Defendants' removal of this action was proper because complete diversity exists between the parties and the amount in controversy is easily satisfied and not in dispute. This action is entirely local and does not implicate any substantial or unique State interest. Any interest that the State may possibly have in this action is remote, general, and insufficient to render it a real party in interest under controlling law; it certainly is not substantial or predominant. And the City's transparent attempt to avoid this Court's jurisdiction by adding Mr. Beaton as a sham defendant should not be countenanced by the Court. Defendants respectfully request that the Court deny the City's motion.

DATED:  September 18, 2023

Respectfully submitted by,

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By: */s/ Elizabeth A. Sperling*
    Elizabeth A. Sperling
    Attorneys for Defendants
    Caydon San Diego Property LLC; Caydon USA Holding LLC; Caydon USA Property Group, LLC; and Alex Beaton

2309868